ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
CONSUELO S. WOODHEAD (Cal. State Bar No. 69653)
VINCE FARHAT (Cal. State Bar No. 183794)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3987
     Facsimile: (213) 894-6269
     E-mail: consuelo.woodhead@usdoj.gov
             vince.farhat@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CR 08-000904-GHK |
| Plaintiff, ) | UNITED STATES' MOTION FOR RELEASE OF CASH BAIL DEPOSIT TO UNITED STATES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF VINCE FARHAT; EXHIBITS A-Q |
| v. ) | |
| RUDRA SABARATNAM, ) | |
| Defendant. ) | Hon. George H. King |
| ) | [Submitted Without Oral Argument Pursuant to Court's Order dated December 20, 2010] |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby files this motion for release of the $400,000 cash bail deposit to the United States towards satisfaction of the United States' joint and several civil judgment in the amount of $15,688,585 entered in United States District Court for the Southern District of California (Case No. 03cv0907), or alternatively, towards the $4,108,779 criminal restitution imposed

against defendant Rudra Sabaratnam in this action.  The United States' motion is based upon the attached memorandum of points and authorities, the Declaration of Vince Farhat, the attached exhibits, all files and records in the case, and upon such further evidence or argument as may be requested by the Court.

DATED: January 24, 2011                    Respectfully submitted,

                                           ANDRÉ BIROTTE JR.
                                           United States Attorney

                                           ROBERT E. DUGDALE
                                           Assistant United States Attorney
                                           Chief, Criminal Division

                                           /s/ Vince Farhat
                                           CONSUELO S. WOODHEAD
                                           VINCE FARHAT
                                           Assistant U.S. Attorneys

                                           Attorneys for Plaintiff
                                           United States of America

CR 08-000904

# TABLE OF CONTENTS

Page

I.     STATEMENT OF ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   PROCEDURAL AND FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . 6

    A.   Findings of Fraud and Entry of FCA Judgment by the District Court for the Southern District of California . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   Post-judgment Collection Efforts in the Southern District of California . 8

    C.   Sabaratnam's Criminal Indictment and Bail Deposit in the Central District of California in the Present Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.   Post-Indictment Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.   The FCA and the FDCPA Operate in Unison to Ensure the Recovery of Money Fraudulently Taken from Taxpayers . . . . . . . . . . . . . . . . . . . . . 16

    B.   The $400,000 Cash Bail Should be Released to the United States Pursuant to the FDCPA and this Court's Inherent Powers . . . . . . . . . . . . . . . . . . 18

    C.   The Cash Bail Deposit Should be Released to the United States for the Additional Reason That 28 U.S.C. § 2044 Requires Application of Cash Bail to the Payment of Any Assessment, Fine, Restitution, or Penalty . 20

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CR 08-000904

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page</u>

<u>Chambers v. NASCO, Inc.</u>,
    501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).................................  18

<u>Cook County v. United States ex rel. Chandler</u>,
    538 U.S. 119, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003)..............................  15

<u>FTC v. National Business Consultants, Inc.</u>,
    376 F.3d 317 (5th Cir. 2004)....................................................................... 18

<u>N.L.R.B. v. M and V Painting, Inc., Number CIV.A. 97-CV75019, at 1</u>,
    2001 WL 1005579 (E.D.Mich. October 29, 2001).........................................  16

<u>United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v.</u>
    <u>Provident Life & Acci.Insurance Co.</u>,
    721 F. Supp. 1247 (S.D. Fla. 1989)............................................................  16

<u>United States v. Bourseau</u>,
    531 F.3d 1159 (9th Cir. 2008).......................................................................7
    <u>cert denied</u>, 29 S. Ct. 1524, 173 L. Ed. 2d 656 (2009)

<u>United States v. Dison</u>,
    573 F.3d 204 (5th Cir. 2009)....................................................................... 18

<u>United States v. Equere</u>,
    916 F. Supp. 450 (E.D. Pa. 1996)................................................................ 20

<u>United States v. Higgins</u>,
    987 F.2d 543 (8th Cir. 1993).................................................................. 19, 20

<u>United States v. Lawrence</u>,
    538 F. Supp. 2d 1188 (D. S.D. 2008)........................................................... 17

<u>United States v. West Indies Transport Co., Inc.</u>,
    57 F. Supp. 2d 198 (D. V.I. 1999)............................................................... 16

<u>Statutes</u>

18 U.S.C. §§ 371.......................................................................................... 10

18 U.S.C. §§ 1349.........................................................................................10

28 U.S.C. § 2044.......................................................................... 3, 6, 19, 20, 21

28 U.S.C. §§ 3001................................................................................... 12, 16

28 U.S.C. §§ 3001(b)................................................................................... 16

28 U.S.C. §§ 3001-3308................................................................................. 4

28 U.S.C. § 3013................................................................................. 18, 19, 21

28 U.S.C. §§ 3101-3105................................................................................ 16

<u>TABLE OF AUTHORITIES</u> (Continued)

<u>Statutes</u>                                                                                     <u>Page</u>

28 U.S.C. §§ 3201-3206.................................................................................... 16

28 U.S.C. § 3205.............................................................................. 4, 8, 17, 18, 19

28 U.S.C. § 3205(a)........................................................................................... 17

28 U.S.C. § 3205(b)(1)......................................................................................... 8

28 U.S.C. § 3205(c)................................................................................. 17, 18, 19

31 U.S.C. § 3729, <u>et</u> <u>seq</u>...................................................................................... 6

42 U.S.C. § 1320a-7(b)(2).................................................................................10

42 U.S.C. § 1320a-7b(b)(2)(A).......................................................................... 14

<u>Other Authorities</u>

S. Rep. No. 99-345 (1986), <u>reprinted</u> <u>in</u> 1986 U.S.C.C.A.N. 5266, 5276.................. 16

CR 08-000904

MEMORANDUM OF POINTS AND AUTHORITIES

I.

STATEMENT OF ISSUE

The present issue is whether the $400,000 cash bail deposit posted by Hellman Hospital, LLC on behalf of the defendant, Rudra Sabaratnam, should be released to the United States and applied towards its $15,688,585 civil judgment against Sabaratnam – or alternatively, towards the $4,108,779 criminal restitution imposed against Sabaratnam in this action – pursuant to either (1) the Federal Debt Collection Procedures Act, because the money was already restrained by a writ of continuing garnishment issued to Hellman and was concealed through an admittedly false answer to a writ of garnishment and admittedly false interrogatory responses; or (2) 28 U.S.C. § 2044, which requires that a cash bail deposit be released to the United States to be applied to the payment of any assessment, fine, restitution, or penalty.  Sabaratnam maintains that he should be allowed to assign the cash bail deposit to his criminal defense attorneys, Crowell & Moring, LLP.

II.

INTRODUCTION

This motion arises from two judgments that the United States has against Sabaratnam: (1) the $15,688,585 False Claims Act judgment against Sabaratnam, Robert Bourseau, and their single-employee corporations, entered in 2006 in the District Court for the Southern District of California (the "FCA judgment"); and (2) the $4,108,779 criminal restitution imposed against Sabaratnam in 2010 by this Court. The FCA judgment followed a bench trial in which the Southern District Court found that Sabaratnam and his co-defendants had repeatedly violated the FCA by causing false statements to be submitted to the Federal Medicare Program through their ownership and operation of a hospital in Chula Vista, California.  See, Ex. A[1],

---

[1]      Parallel citations to the pertinent page(s) of the attached volume of exhibits
(continued...)

3                                    CR 08-000904

1  September 29, 2006 Findings of Fact and Conclusions of Law, Case No. 03cv907,

2  [V. 2].

3      The United States, through the United States Attorney's Office for the Southern

4  District of California, has been pursuing collection of the FCA judgment under the

5  Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001-3308.  In

6  connection with these efforts, the United States served interrogatories on Sabaratnam

7  and Bourseau seeking to uncover their property interests in a constantly changing

8  litany of business entities.  The United States also applied for, and the Southern

9  District Court issued, writs of garnishment to over twenty separate entities that were or

10  are associated in some way with Sabaratnam or Bourseau.  A writ of garnishment

11  issued under the FDCPA requires a garnishee to identify and withhold a debtor's

12  property so that it can be paid to the United States toward satisfaction of a judgment.

13  28 U.S.C. § 3205.

14      On June 5, 2008, the Southern District Court issued a writ of garnishment to an

15  entity named Hellman Hospital, LLC (Hellman).  Ex. B, Application for Writ of

16  Continuing Garnishment [V. 26]; Ex. C, Writ of Continuing Garnishment [V. 29];

17  Ex. D, Clerk's Notice, Request for Hearing, and Certificate of Service [V. 33].  The

18  writ of garnishment required Hellman to: (1) withhold any earnings (in any form) of

19  Sabaratnam; and (2) file a sworn answer disclosing its relationship with Sabaratnam

20  and identifying any earnings or property that Hellman possessed, or expected to

21  possess, in which Sabaratnam had a substantial nonexempt interest, in order that the

22  held property be paid to the United States toward satisfaction of the FCA judgment.  28

23  U.S.C. § 3205.

24      On June 12, 2008, Hellman filed its answer to the writ of garnishment stating

25  under oath that it had no relationship with Sabaratnam and that it did not have, or

26  expect to have, any earnings or property belonging to him.  Ex. E, Answer of

27

28      [1](...continued)
are indicated by [V. __ ].

Garnishee [V. 45].  Likewise, on May 30, 2008, Sabaratnam served interrogatory responses in which he stated under oath that he had no relationship with Hellman. Ex. F, Supplemental Responses to Interrogatories, No. 19(n) [V. 54-56].  Sabaratnam's interrogatory responses and the answer to the writ of garnishment were false and wrongfully prevented the United States from obtaining money toward satisfaction of the FCA judgment.

Less than two months later, Sabaratnam was indicted in this district for running another health care fraud scheme.  Sabaratnam's bail was set at $700,000, which he satisfied through a $300,000 lien against real property ostensibly owned by his wife, and a $400,000 cash deposit.  The cash deposit was paid for with a $400,000 check from Hellman – the very same entity that the Southern District Court had restrained from paying money to or on behalf of Sabaratnam.[2]   Ex. G, Hellman check in the amount of $400,000, dated August 7, 2008 [V. 60]; Ex. H, California Bank and Trust cashier's check in the amount of $400,000, dated August 7, 2008 [V. 62]; Ex. I, Receipt from District Court Clerk for $400,000, dated August 8, 2008 [V. 64].

At a bail hearing during which potential bail sources were discussed, Sabaratnam failed to disclose to this Court (or to Government counsel) that the $400,000 cash bail deposit that he was proposing to deposit for his release was already subject to an outstanding writ of garnishment issued by the Southern District Court. Sabaratnam represented at his bail hearing that he had sufficient assets apart from the $400,000 proposed as a bail deposit to otherwise satisfy the FCA judgment.

After his release on bail, Sabaratnam admitted in a deposition that his interrogatory responses denying any relationship with Hellman were false.  Ex. J, RS Tr. 159:21-160:13 [V. 70:21-71:13].  His co-defendant Bourseau likewise admitted in a deposition that Sabaratnam owned 50% of Hellman through another entity, and

---

[2]     At about the same time, Hellman also paid $250,000 to Sabaratnam's criminal defense counsel, Ex. J, Sabaratnam Deposition Transcript ("RS Tr.") 98:9-100:21 [V. 67:9 - 69:21].

1    that the $400,000 check issued for the cash bail deposit was treated as a distribution to

2    Sabaratnam.  Ex. K, Bourseau Deposition Transcript ("RB Tr.") 97:17-99:10

3    [V. 79:17-81:10].

4         After he pled guilty, Sabaratnam filed an assignment in this Court purporting to

5    assign the full amount of the $400,000 cash bail deposit to his criminal defense

6    attorneys, Crowell & Moring, LLP.  In that assignment, Sabaratnam asserts that he is in

7    fact "the owner of the cash bail" and is a manager of Hellman.  Ex. L, Notice of

8    Assignment of Cash Bail Deposit and Assignment of Cash Bail Deposit, p. 3, CR 100

9    [V. 85].

10        If it were not for Sabaratnam's and Hellman's affirmative misrepresentations

11   and wrongful avoidance of the Southern District Court's writ, the United States would

12   have already secured the $400,000 from Hellman and that money would never have

13   been available to be deposited as Sabaratnam's cash bail.  The $400,000 remains on

14   deposit with the Clerk of Court.  Now that Sabaratnam has pled guilty, been sentenced,

15   and has reported to custody, the United States seeks an order that the $400,000 be

16   released to the United States because it was already subject to the Southern District

17   Court's garnishment writ, or alternatively, because it should be applied as payment

18   toward restitution, as required under 28 U.S.C. § 2044.

19   III.

20   PROCEDURAL BACKGROUND AND STATUS

21   A.   Findings of Fraud and Entry of FCA Judgment by the District Court for the

22         Southern District of California

23        On May 6, 2003, the United States filed a civil complaint in District Court for

24   the Southern District of California against Sabaratnam, Bourseau and their single-

25   employee corporations, Navatkuda, Inc. and RIB Medical Management, Inc., alleging

26   violations of the federal FCA, 31 U.S.C. § 3729, et seq., and the common law.  The

27   complaint alleged that Sabaratnam and Bourseau caused the submission of false

28   Medicare cost reports arising from their ownership and operation of Bayview Hospital

& Mental Health Systems.  On September 29, 2006, following a six-day bench trial, the Southern District Court made factual and legal findings that Sabaratnam and his co-defendants conspired to submit, and knowingly submitted, false statements and claims as contained in Medicare costs reports for 1997, 1998 and 1999.  Ex. A, Findings of Fact and Conclusions of Law [V. 2].[3/]

The Southern District Court determined that single damages were $7,925,444.  The FCA provides that any damages are trebled, so damages in the amount of $23,776,332 were awarded.  The Southern District Court also assessed civil penalties in the amount of $31,000.  A joint and several judgment in the amount of $23,807,332 was entered against Sabaratnam, Bourseau, Navatkuda and RIB.  Id., p. 22 [V. 23].

To address a miscalculation regarding the single damages, the United States filed a motion to amend the judgment.  On December 1, 2006, the Southern District Court granted the motion and reduced the amount of single damages to $5,219,195, so that after trebling under the FCA, damages in the amount of $15,657,585 were awarded.  Ex. M, Order Granting Plaintiff's and Defendants' Rule 59(e) Motions to Alter or Amend the Judgment, dated December 1, 2006, p. 1-2 [V. 99-100].  The assessment of $31,000 in civil penalties was not affected.  Amended judgment was entered in the amount of $15,688,585.

Sabaratnam and his co-defendants never posted an appeal bond or requested a stay of execution on the judgment.  On July 12, 2008, the Ninth Circuit Court of Appeals affirmed the judgment.  U.S. v. Bourseau, 531 F.3d 1159 (9th Cir. 2008).  On August 19, 2008, the Ninth Circuit denied a petition for rehearing en banc.  A petition for writ of certiorari to the United States Supreme Court was denied.  Id., cert. denied, 129 S. Ct. 1524, 173 L. Ed. 2d 656 (2009).

//

//

---

[3/]      The falsities included such items as fictitious rent, bogus management fees, and inflation of the amount of reimbursable space used for patient care.

7

B.      Post-judgment Collection Efforts in the Southern District of California

The United States, through the United States Attorney's Office for the Southern District of California, has undertaken efforts to find and secure money from a constantly shifting maze of over 20 entities Sabratnam and Bourseau may have been affiliated with. Consistent with these efforts, the United States served Sabratnam with interrogatories. On May 30, 2008, Sabaratnam responded under oath that he had no relationship, position or title with, or beneficial interest in, Hellman. Ex. F, Supplemental Responses to Interrogatories [V. 54-56].

On June 5, 2008, pursuant to the United States' application in accordance with 28 U.S.C. § 3205(b)(1), the Southern District Court, by the Clerk of the Court, issued to Hellman a writ of continuing garnishment as to Sabaratnam. Ex. B, Application for Writ of Continuing Garnishment [V. 26]; Ex. C, Writ of Continuing Garnishment [V. 29]. Sabaratnam was served at that time with a copy of the Application, Writ, and Clerk's Notice of Post-judgment Garnishment/Instructions. Ex. D, Clerk's Notice, Request for Hearing, and Certificate of Service [V. 43]. The writ instructed Hellman that it was "required by law to withhold [Sabaratnam's] nonexempt disposable earnings (whether paid in the form of independent contractor payments, salary, wages, deferred compensation, or otherwise) . . . and to retain the amounts withheld until further order of the Court." Ex. C, p. 2 [V. 30]. The writ of garnishment further instructed Hellman that "[y]ou are required by law to complete under oath the accompanying Answer of Garnishee," and that "IT IS UNLAWFUL TO PAY OR DELIVER TO THE JUDGMENT DEBTOR ANY MONEY OR PROPERTY DESCRIBED IN THIS WRIT." Id., p. 2-3 [V. 30-31] (capitals in original).

On June 12, 2008, Hellman filed its answer to the writ of garnishment. Ex. E, Answer of Garnishee [V. 45]. Sabaratnam was served at that time with a copy of Hellman's answer. Id., p. 4-5 [V. 48-49]. In response to the instruction that Hellman disclose the "position, title, or relationship [Sabaratnam] held with [Hellman]," Hellman stated, "None." Id., p. 3 [V. 47]. In response to the instruction that Hellman

identify "[t]he amount [Hellman] anticipates owing to [Sabaratnam] in the future, and the specified periods of payment (whether they will be weekly or another specified period)," Hellman stated, "No compensation owed to Defendant Judgment Debtor." Id.

The final section of the writ instructed Hellman that:

> If you as Garnishee deny that you have in your custody, control,
> or possession – and deny that you expect to have in your
> custody, control or possession in the future – any earnings
> (whether paid in the form of independent contractor payments,
> salary, wages, deferred compensation, or otherwise), or
> property that are subject to the Writ of Continuing
> Garnishment, check the applicable line(s) and explain below:

In response, Hellman represented:

> [Hellman] is in no manner and upon no account indebted or
> under liability to [Sabaratnam] and [Hellman] does not have in
> its custody, control, or possession – and does not expect to have
> in its custody, control or possession in the future – any earnings
> (whether paid in the form of independent contractor payments,
> salary, wages, deferred compensation, or otherwise) or property
> belonging to [Sabaratnam], or in which the Garnishee has an
> interest; and is in no manner liable as Garnishee in this action.

Id., p. 3-4 [V. 47-48].

C.    Sabaratnam's Criminal Indictment and Bail Deposit in the Central District
      of California in the Present Action

Less than two months after Hellman's answer to the writ of garnishment and Sabaratnam's interrogatory responses, Sabaratnam was indicted in this district for conspiracy to pay kickbacks for patient referrals, and to commit health care fraud, in violation of 18 U.S.C. §§ 371 and 1349, and for payment of kickbacks for patient

CR 08-000904

referrals, in violation of 42 U.S.C. § 1320a-7(b)(2).  On August 6, 2008, Sabaratnam made his initial appearance before the Honorable Frederick F. Mumm, United States Magistrate Judge.  Ex. N, Transcript of August 6, 2008 Initial Appearance [V. 105]. Sabaratnam was represented by John Vandevelde.

Pretrial services had recommended that Sabaratnam's bail be set at $400,000, which Sabaratnam proposed satisfying by posting the deed to real properties ostensibly owned by his wife.  At the initial appearance, the Government opposed bail and requested a <u>Nebbia</u> hearing, citing to the outstanding FCA judgment against Sabaratnam and stating that "[t]he government is concerned first that there is an issue of fact as to whether the assets that have been proffered as security belong to [Sabaratnam] or to his spouse," and that "[a]ny money that he owns is going to be subject to the [Southern District of California] civil [FCA] judgment.  He is going to lose that money in satisfaction of the judgment." <u>Id</u>., 6:9-13 [V. 107:9-13].[4] Government counsel further stated that "[Sabaratnam's] assets would not be good security for assuring his appearance . . . .  And, so, the government . . . strongly believes that any security must be a true third-party surety." <u>Id</u>., 6:14-18 [V. 107:14-18].

With regard to the proposal that Sabaratnam's wife deed real properties to secure Sabaratnam's bail obligation, the Court inquired whether it would "be that difficult to figure out for how long those have been owned by whoever is claiming to be the owner of the property." <u>Id</u>., 8:16-18 [V. 109:16-18].  Government counsel replied, "We know nothing about these properties at this time," and stated "[t]he concern is that those assets may have been commingled - - that, in fact, they are [Sabaratnam's] assets, which, therefore, would be subject to the civil judgment, and, therefore would be illusory as security in this case." <u>Id</u>., 8:20-9:1 [V. 109:20-110:1].  The Court continued the bail hearing to the following day. <u>Id</u>., 16:18-17:12 [V. 111:18-112:12]; 25:1-9 [V.

---

[4]      Government counsel additionally expressed concern as to whether any bail funds would be comprised of fraudulent proceeds. <u>Id</u>., 6:23-25 [V. 107:23-25].

CR 08-000904

113:1-9]; 27:13-17 [V. 115:13-17].

The bail hearing resumed on August 7, 2008.  Ex. O, Transcript of August 7, 2008 Detention Hearing [V. 117].   Sabaratnam, through his counsel, John Vandevelde, began by informing the Court that "it would take quite some time to get the paperwork together . . . for [the real] property [discussed yesterday]," and proposed an alternative of securing "Sabaratnam's appearance with full payment of the full amount of the 400,000-dollar bail that was recommended by pretrial services," through a cashier's check remitted by "an entity known as 'Hellman Hospital, LLC.'"  Id., 4:24-5:14 [V. 118:24-119:14].  Sabaratnam  represented that "Hellman Hospital, LLC is not a judgment-debtor on the judgment on the civil false claims act case that was litigated in San Diego," and that "it is an entity that the family trust for Dr. Sabaratnam has an interest in."  Id., 5:15-18 [V. 119:15-18].  Sabaratnam did not disclose to the Court that the Southern District Court had already issued a writ of garnishment as to Sabaratnam's interest in Hellman, or that Sabaratnam held a 50% interest in Hellman.

Sabaratnam further represented at the hearing on August 7, 2008, that Hellman "together with another LLC . . . by the name of 1711 Temple . . . owns these properties and owns these hospital businesses and has a net equity far exceeding the 15-1/2 million dollars," id., 5:18-22 [V. 119:18-22], that "there has been a sale that's been negotiated to sell those properties," id., 6:15-16 [V. 120:15-16], and that "there are assets to satisfy the judgment that the government expressed concern about."  Id., 7:14-16 [V. 121:14-16].  Mr. Vandevelde then stated, however, that "because we would like to accomplish this today and get [Sabaratnam] released today, we have taken the step of having Hellman, one of the hospital entities, to issue this check that's here and ready to go."  Id., 7:19-22 [V. 121:19-22].

//

//

11

1    Government counsel responded as follows:

2         As [the government] indicated yesterday, the

3    government's position is that for something to constitute

4    security in this case, to really be any kind of assurance that the

5    defendant will appear, it has to be money or property that won't

6    otherwise be used to satisfy the currently outstanding and

7    immediately collectible 15-million-dollar judgment that the

8    United States has.

9         And [Sabaratnam] pointed out that Hellman [Hospital]

10   LLC is not a judgment-debtor.  However, under the Federal

11   Debt Collections Procedures Act, which is set forth at 28 U.S.C.

12   Section 3001, et seq.,

13        "All property in which a judgment debtor has a

14   nonexempt interest" . . . "is subject to levy to collect a civil

15   judgment held by the United States. "

16                        .    .    .

17        And . . . Sabaratnam through his family trust is one of the

18   co-owners of Hellman [Hospital] LLC.

19        So, it's the Government's position that this 400,000-

20   dollar check that's being offered is something that the

21   Government attorneys collecting on the San Diego debt can and

22   should be entitled to get anyway.

23        So, that means . . . Sabaratnam isn't really offering

24   anything that's true security in this case.

25   Id., 10:9–11:15 [V. 123:9-124:15].  The Court had previously noted Sabaratnam's

26   failure to submit financial statements, id., 8:12-20 [V. 122:12-20], and later stated:

27        Without any information regarding [Sabaratnam's]

28   financial situation, $400,000 in and of itself doesn't mean

                              12                          CR 08-000904

1       anything.  It has to be relative to something.

2              So, what I'm really concerned about is is this something

3       that is sufficient that's going to insure [Sabaratnam's]

4       appearance.  And that's really the only thing I'm looking for.

5       And without the financial information and without some

6       suggestion that this $400,000 doesn't automatically get swept

7       up to the government anyway, it's hard for me to make that

8       determination.

9  Id., 16:18-17:2 [V. 125:18-126:2].  Mr. Vandevelde replied that "I think the sweeping-

10  up issue I would suggest is dealt with by establishing that there are more than adequate

11  assets otherwise to satisfy the judgment.[5]"  Id., 17:3-6 [V. 126:3-6].  He later stated

12  that "Cutting through everything.  Cutting through SKRN Trust, cutting through the

13  Family Limited Partnership, cutting through all that, if you put everything in a column

14  and say it's attributable, allocable to Dr. Sabaratnam, that's the approximately $15.8

15  million."  Id., 41:5-9 [V. 127:5-9].

16       The Court later indicated that it had satisfied itself "with respect to the 15

17  million," id., 67:13-14 [V. 128:13-14], and set Sabaratnam's bail in the amount of "a

18  cash deposit of $400,000 and an appearance bond in the amount of $300,000 with an

19  affidavit of surety with full justification and deeding of property . . . ."[6]  Id., 70:18-22

20  [V. 129:18-22].  The cash deposit was in the form of a cashier's check issued on behalf

21  of Hellman.  Ex. G, Hellman check [V. 60]; Ex. H, California Bank and Trust cashier's

22  check [V. 62]; Ex. I, Receipt from District Court Clerk [V. 64].

23  //

24  //

25

26      [5]     Despite Sabaratnam's representations to the Court that Sabaratnam had more than adequate assets to satisfy the FCA judgment, and despite the United States'
27  continuing collection efforts, the current outstanding balance on the FCA judgment, including interest, is in excess of $18,770,000.

28      [6]     Bourseau, who was later arrested and charged as a co-conspirator, was detained pending further proceedings.

D.      Post-Indictment Proceedings

Sabaratnam was arraigned on August 18, 2008.  On October 21, 2008, Sabaratnam was deposed in the Southern District of California in connection with the collection proceedings for the FCA judgment.  Sabaratnam testified that his interrogatory response that he had no relationship with, or interest in, Hellman was "inaccurate."  Ex. J, RS Tr. 159:21-160:13 [V. 70:21-71:13].  At his deposition on October 22, 2008, Bourseau admitted that with regard to his role in helping Sabaratnam make bail he (Bourseau) "went to the bank, and . . . purchased a cashier's check for $400,000 paid for by Hellman funds."  Ex. K, RB Tr. 95:25–96:1 [V. 77:25-78:1]; 97:13-16 [V. 79:13-16].  Bourseau accessed Hellman funds because "Hellman had the money in the bank" and Sabaratnam was entitled to access to 50% of Hellman's funds.  Id. 97:17–98:6 [V. 79:17-80:6].  Bourseau "looked at the money [of Hellman] as 50% belonging to Secured Equities [Investment Partners, L.P.], which is basically Dr. Sabaratnam."[7/]  Id., 98:2-3 [V. 80:2-3].

On December 12, 2008, Sabaratnam pled guilty pursuant to a cooperation plea agreement to counts three and six of the indictment, which charge violations of 42 U.S.C. § 1320a-7b(b)(2)(A), payment of kickbacks for patient referrals.

Approximately seven months later, on July 1, 2009, Sabaratnam filed with this Court a notice of assignment and assignment of the $400,000 cash bail deposit, seeking to assign it to his attorneys, Crowell & Moring, LLP.  Ex. L, CR 100, July 1, 2009 [V. 83].  The notice of assignment states that: "Sabaratnam is the owner of the cash bail," and further provides that "[t]he cashier's check for the $400,000 bail deposit was disbursed by Hellman Hospital, LLC, of which Sabaratnam is a Manager."  Id., p. 3 [V. 85].  The basis for the claim that Sabaratnam is "the owner" of the cash bail is a post

---

[7/]      Before Sabaratnam's arrest, the Southern District Court had also issued a writ of continuing garnishment to Hellman as to Bourseau.  As with Sabaratnam, Hellman filed an answer in which it falsely denied that it had any relationship with Bourseau or that Bourseau had a property interest in Hellman.  Like Sabaratnam, Bourseau served interrogatory responses on the United States in which he falsely denied any relationship with Hellman.

hoc document titled "Acknowledgment Re Distribution," entered in January 2009 (long after the money was posted) purporting to set forth what the parties intended when the money was withdrawn from Hellman months before.  Id.  Both the notice of assignment and the Acknowledgment re Distribution state that the intent of the parties was that "upon the release of the Funds by the Court, the Funds shall be the property of SEIP."  Id.  SEIP stands for Secured Equity Investment Partners, L.P.  Id.  Like Hellman, SEIP was subject to writs of garnishment to satisfy the FCA judgment, which were in place before either the Acknowledgment re Distribution or the assignment were executed.  See Exhs. P, Application, Notice and Writ of Continuing Garnishment dated June 19, 2008, and Answer to Writ, dated July 1, 2008 [V. 131]; and Q, Application, Notice and Writ of Continuing Garnishment dated November 14, 2008 [V. 146].  Further, the alleged intent of the parties as set forth in these 2009 documents was not disclosed to the Court or the Government at the time the $400,000 was posted as bail.

On August 30, 2010, the Court sentenced Sabaratnam to 24 months of confinement, 3 years of supervised release, restitution in the amount of $4,108,779, and a special assessment in the amount of $200.  CR 147.[8/]  The Court ordered Sabaratnam to self-surrender on December 6, 2010.[9/]  The Court further ordered that the cash bail deposit not be exonerated and remain on deposit with the Clerk of the Court until further order of the Court.

The parties met and conferred on September 27, 2010 and October 6, 2010, but were unable to reach agreement on the disposition of the cash bail or the forum for adjudication of the issue.  On November 12, 2010, the parties filed a joint

---

[8/]    For his own role in the kickback scheme, Bourseau pled guilty and was sentenced to 37 months of confinement and 3 years of supervised release.  In addition, Sabaratnam, Bourseau and their entity, Intercare Health Systems, Inc., entered into a joint and several civil consent judgment in this district in the amount of $8,457,769 in favor of the United States and in the amount of $1,542,231 in favor of the State of California.

[9/]    This date was moved to January 3, 2011, and Sabaratnam has since reported to custody.

15

1  memorandum regarding the forum for adjudicating the disposition of the cash bail.

2  The Court entered an Order on December 20, 2010, that it would determine the

3  disposition of Sabaratnam's cash bail deposit.  CR 159.  In accordance with that Order,

4  the parties met and conferred on January 13, 2011, but were unable to reach agreement

5  on the disposition of bail.

6                                          IV.

7                                      ARGUMENT

8  A.      The FCA and the FDCPA Operate in Unison to Ensure the Recovery of

9            Money Fraudulently Taken from Taxpayers

10         The FCA is the Government's primary tool in redressing fraud perpetrated

11  against the United States that results in a loss to taxpayers.  "Congress wrote [the FCA]

12  expansively, meaning 'to reach all types of fraud, without qualification, that might

13  result in financial loss to the Government.'"  Cook County v. United States ex rel.

14  Chandler, 538 U.S. 119, 129, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003).  The FCA "is

15  intended to protect the Treasury against the hungry and unscrupulous host that

16  encompasses it on every side . . . ."  S. Rep. No. 99-345 (1986), reprinted in

17  1986 U.S.C.C.A.N. 5266, 5276.  Through the FCA, Congress sought to "deter an

18  increasingly pervasive and severe problem of great national concern" and the

19  legislative history of the FCA "shows congressional concern over billions of dollars in

20  public funds lost through government fraud . . . ."  United States ex rel. Stinson, Lyons,

21  Gerlin & Bustamante, P.A. v. Provident Life & Acci. Ins. Co., 721 F. Supp. 1247,

22  1253-1254 (S.D. Fla. 1989).

23         "The Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq.,

24  provides the exclusive civil procedures for the government . . . to recover a judgment

25  on a debt.  § 3001(b)."  N.L.R.B. v. M and V Painting, Inc., No. CIV.A. 97-CV75019,

26  at *1, 2001 WL 1005579 (E.D. Mich. October 29, 2001).  Toward that end, the

27  FDCPA establishes a panoply of federal pre-judgment and post-judgment remedies.

28  See, 28 U.S.C. §§ 3101-3105 (pre-judgment remedies); and 28 U.S.C. §§ 3201-3206

(post-judgment remedies).

Garnishment is one of the post-judgment remedies available to the United States under the FDCPA.  28 U.S.C. § 3205.  A writ of garnishment under the FDCPA is issued by the court, upon application of the United States (with notice to the debtor), and requires a garnishee to identify and withhold a debtor's property so that the court can make an order directing the garnishee as to disposition of the judgment debtor's nonexempt interest in such property.  28 U.S.C. § 3205(c).

A writ of garnishment may issue "against property . . . in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor."  28 U.S.C. § 3205(a).  The scope of property interests subject is defined broadly in the FDCPA and encompasses all present and future interests in real and personal property.  See, United States v. West Indies Transport Co., Inc., 57 F. Supp. 2d 198, 205 (D. V.I. 1999) (the FDCPA is "broadly drawn" to subject to recovery all property in which a judgment debtor has a substantial nonexempt interest, including "that property in which the judgment debtor's interest is equitable.").  Ownership of property may be proven by actual possession, dominion, control, title and financial stake; possession of bare legal title is not dispositive of the ownership of property.  See, id., at 203, citing United States v. One 1982 Porsche 928, 732 F. Supp. 447, 451 (S.D.N.Y. 1990).

"[I]f the court determines that the requirements of [§ 3205] are met, the court *shall issue* an appropriate writ of garnishment."  U.S. v. Lawrence, 538 F.Supp.2d 1188, 1194 (D. S.D. 2008) (emphasis in original).  On June 5, 2008, the Southern District Court made such a determination and issued a writ of garnishment to Hellman pursuant to 28 U.S.C. § 3205(c).  Beyond commanding full disclosure of Sabaratnam's interest, the Southern District Court's writ restrained the payment or delivery of any money to or on behalf of Sabaratnam.  Moreover, had Sabaratnam's property and interest in Hellman been properly identified pursuant to the FDCPA as required, the Southern District Court would have then issued an order directing Hellman as to

17

CR 08-000904

1  "disposition of the property" (i.e., directing it be paid over the United States).  See, 28

2  U.S.C. § 3205(c).

3  B.  The $400,00 Cash Bail Should be Released to the United States Pursuant to the

4  FDCPA and this Court's Inherent Powers

5  The $400,000 cash bail deposit was at all times, and remains, subject to the writ

6  of continuing garnishment issued by the the Southern District Court.  This Court

7  should accordingly enter an order, pursuant to the FDCPA, 28 U.S.C. § 3205(c), that

8  the $400,000 cash bail deposit be released to the Southern District Court to be applied

9  to the FCA judgment.  The garnishment restricting removal of the $400,000 was in

10  place when the funds were withdrawn from Hellman and placed on deposit with this

11  Court.  To permit Sabaratnam to use those funds to pay a personal expense (his

12  attorneys fees) would flout the garnishment order and allow Sabaratnam to profit from

13  his multiple misrepresentations (a) that the $400,000 was not his money and (b) that he

14  had sufficient assets independent of the $400,00 to pay the FCA judgement.

15  There are two additional bases for the Court to release the cash bail to the United

16  States and thus to assure the proper operation and enforcement, under 28 U.S.C. §

17  3205(c), of the writ of garnishment issued by the Southern District Court.

18  First, the Supreme Court has recognized that all courts have certain, implied

19  powers.  Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d

20  27 (1991) ("It has long been understood that 'certain implied powers must necessarily

21  result to our Courts of justice from the nature of their institution,' powers 'which

22  cannot be dispensed with in a Court, because they are necessary to the exercise of all

23  others.'").  The Supreme Court has made clear that "[b]ecause of their very potency,

24  inherent powers must be exercised with restraint and discretion," and that "[a] primary

25  aspect of that discretion is the ability to fashion an appropriate sanction for conduct

26  which abuses the judicial process."  Id. at 44-45.  An appropriate exercise of discretion

27  here is to remedy the effect of the abuse of the FDCPA collection process, and the

28  frustration of a lawful writ of garnishment issued by the Southern District Court, by

18

releasing the $400,000 cash bail deposit to the United States.

Second, the FDCPA, under 28 U.S.C. § 3013, codifies a court's "inherent power" to achieve justice in collection proceedings.  That section provides that "[t]he court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter."  28 U.S.C. § 3013.

The plain language of 28 U.S.C. § 3013 permits a court to extend the United States' collection powers when warranted by the unique facts of a case.  See United States v. Dison, 573 F.3d 204, 207 (5th Cir. 2009) ("When the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language.").  The discretionary power to extend the use of judgment enforcement procedures is far-reaching.  See, e.g. FTC v. Nat'l Business Consultants, Inc., 376 F.3d 317 (5th Cir. 2004) (Corporate debtor's owner, Namer, made use of three closely held entities to prevent the United States from enforcing a judgment in its favor.  In response, the district court joined Namer's affiliates as additional defendants to the action.  The Fifth Circuit affirmed the district court's addition of the affiliates as a proper exercise of discretion under the authority of 28 U.S.C. § 3013.).  Here, beyond the inherent authority granted by 28 U.S.C. § 3205(c), the Court has and should exercise its authority under 28 U.S.C. § 3013 to order the cash bail deposit released to the United States to ensure compliance with the FDCPA and the enforcement of the writ of garnishment issued by the Southern District Court.

//

//

//

19

CR 08-000904

C.    The Cash Bail Deposit Should Be Released to the United States for the
Additional Reason That 28 U.S.C. § 2044 Requires Application of Cash Bail to
the Payment of Any Assessment, Fine, Restitution, or Penalty

The United States is entitled to receive bail money deposited by a federal debtor
when the underlying debt arises from one of a broad spectrum of sources:

> On motion of the United States attorney, the court shall order
> any money belonging to and deposited by or on behalf of the
> defendant with the court for the purposes of a criminal
> appearance bail bond (trial or appeal) to be held and paid over
> to the United States attorney to be applied to the payment of
> any assessment, fine, restitution, or penalty imposed upon the
> defendant. The court shall not release any money deposited for
> bond purposes after a plea or a verdict of the defendant's guilt
> has been entered and before sentencing except upon a showing
> that an assessment, fine, restitution or penalty cannot be
> imposed for the offense the defendant committed or that the
> defendant would suffer an undue hardship. This section shall
> not apply to any third party surety.

28 U.S.C. § 2044.

Relief under 28 U.S.C. § 2044 is straightforward. See, United States v. Higgins,
987 F.2d 543, 547 (8th Cir. 1993) ("It is a simple procedural mechanism by which the
government, after the purposes of bail have been served, may make a motion as a
judgment creditor that the court order the bond fund be delivered to it.").

As detailed above, despite all of the misrepresentations that Sabaratnam had no
interest in or relationship with Hellman, it is indisputable that the $400,000 is "money
belonging to and deposited by or on behalf of the defendant" within the meaning of 28
U.S.C. § 2044. Sabaratnam himself admitted as much at his deposition and filed a
pleading with this Court in which he asserts that the cash bail deposit belongs to him.

1  Ex. J, RS Tr. 190:21-192:18 [V. 72:21-74:18]; Ex. L, p. 3, CR 100 [V. 85].  The cash

2  bail deposit itself is accordingly within the purview of 28 U.S.C. § 2044.

3       As the $400,000 cash bail deposit is "money belonging to and deposited by or

4  on behalf of the defendant," 28 U.S.C. § 2044 requires that it be applied to any

5  assessment, fine, restitution or penalty imposed against Sabaratnam.  On August 30,

6  2010, as part of Sabaratnam's sentencing and judgment, this Court ordered that

7  Sabaratnam pay restitution in the amount of $4,108,779.  Criminal Minutes-Sentencing

8  and Judgment, CR 147.

9       Notwithstanding the writ of garnishment and the United States' entitlement to

10  the $400,000 cash bail deposit, following his guilty plea Sabaratnam filed an attempted

11  assignment of the cash bail deposit purporting to assign it to his criminal defense

12  attorneys, Crowell & Moring, LLP.  Such an assignment is invalid and cannot have the

13  effect of displacing the United States' entitlement to the cash bail.

14       The attempted assignment to counsel cannot defeat the operation of 28 U.S.C.

15  § 2044.  "The purpose of [28 U.S.C. § 2044] is to enable the government to collect

16  certain outstanding payments owed by a defendant." United States v. Equere, 916 F.

17  Supp. 450, 452 (E.D. Pa. 1996).  It "codifies the discretion courts have long exercised,

18  to pay, on a proper motion, bond or bail money to the parties with a legally established

19  superior claim to it . . . ." Id., citing Higgins, 987 F.2d at 546, n.3, 547.  The United

20  States has a superior claim to the cash bail deposit by virtue of 28 U.S.C. § 2044.  If, as

21  here, an assessment, fine, restitution, or penalty is imposed, Section 2044 requires that

22  the cash bail deposit be used first to satisfy that obligation.  To permit the  assignment

23  here to trump the Government's and the victim's, i.e., the Medicare Program's,

24  entitlement to the funds would eviscerate Section 2044.  If the assignment has any

25  effect at all (which the Government disputes), its effect is at most to convey to

26  Sabaratnam's counsel a right to any funds remaining after the bail has been applied to

27  restitution as required by Section 2044.

28  //

21                                                         CR 08-000904

1    Moreover, the validity of Sabaratnam's attempted assignment to his counsel is

2  necessarily dependent upon the legitimacy of the original withdrawal of $400,000 from

3  Hellman for use as Sabaratnam's bail.  But this transfer was made in violation of the

4  writ.  Sabaratnam could not legitimately circumvent either the writ or Section 2044 by

5  assigning these funds to his lawyers or anyone else.  Therefore, to the extent necessary,

6  this Court also can and should exercise its inherent power or its power under 28 U.S.C.

7  § 3013 and set aside the assignment from Hellman to Sabaratnam (and consequently

8  the purported assignment by Sabaratnam to his criminal defense counsel) to avoid any

9  prejudice to the United States' use of the FDCPA or to the Southern District Court's

10  issuance of a writ of garnishment.

11                                              IV.

12                                        CONCLUSION

13    For the foregoing reasons, the United States respectfully requests that the Court

14  release the $400,000 cash bail deposit to the United States towards satisfaction of the

15  FCA judgment, or alternatively, to the United States towards satisfaction of the

16  restitution imposed against Sabaratnam in this action.

17

18  DATED: January 24, 2011                    Respectfully submitted,

19                                             ANDRÉ BIROTTE JR.
                                               United States Attorney
20
                                               ROBERT E. DUGDALE
21                                             Assistant United States Attorney
                                               Chief, Criminal Division
22

23                                             /s/ Vince Farhat
                                               CONSUELO S. WOODHEAD
24                                             VINCE FARHAT
                                               Assistant U.S. Attorneys
25
                                               Attorneys for Plaintiff
26                                             United States of America

27

28

                                          22                         CR 08-000904

1

DECLARATION OF VINCE FARHAT

2

I, Vince Farhat, declare and state as follows:

3

1.      I am an Assistant United States Attorney for the Central District of

4

California.  I am one of the assigned attorneys with responsibility for this criminal

5

matter for the United States.

6

2.      Filed herewith are the United States' Table of Exhibits and Exhibits,

7

which are true and accurate copies of the documents listed as Exhibits A-Q to the

8

subject motion for release of the cash bail deposit to the United States.

9

I declare under penalty of perjury that the foregoing is true and correct.

10

DATED: January 24, 2011, at Los Angeles, California.

11

12

/s/ Vince Farhat

13

VINCE FARHAT
Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF EXHIBITS AND EXHIBITS IN SUPPORT OF UNITED STATES'
MOTION FOR RELEASE OF CASH BAIL DEPOSIT TO UNITED STATES</u>**

<u>Exhibit</u>                                                                                          <u>Pages</u>

Exhibit A:   Findings of Fact and Conclusions of Law,                        001-024
             entered September 29, 2006, <u>United States v.
             Bourseau, et al.</u>, SDCA Case No. 03cv907;

Exhibit B:   Application for writ of continuing garnishment as to          025-027
             Sabaratnam, dated June 5, 2008, <u>United States v.
             Bourseau, et al.</u>, SDCA Case No. 03cv907;

Exhibit C:   Writ of continuing garnishment as to Sabaratnam,             028-031
             dated June 5, 2008, <u>United States v. Bourseau, et al.</u>,
             SDCA Case No. 03cv907;

Exhibit D:   Clerk's Notice, Request for Hearing, and                        032-043
             Certificate of Service for post-judgment continuing
             garnishment as to Sabratnam, dated June 5, 2008,
             <u>United States v. Bourseau, et al.</u>,SDCA Case No. 03cv907;

Exhibit E:   Answer of Garnishee Hellman Hospital, LLC as to             044-049
             Sabaratnam, filed June 12, 2008, <u>United States v.
             Bourseau, et al.</u>, SDCA Case No. 03cv907;

Exhibit F:   Excerpts from Sabaratnam's Supplemental Responses         050-058
             to Post-Judgment Interrogatories, No. 19(n),
             dated May 30, 2008, <u>United States v.
             Bourseau, et al.</u>, SDCA Case No. 03cv907;

Exhibit G:   Hellman check in the amount of $400,000, dated              059-060
             August 7, 2008;

Exhibit H:   California Bank and Trust cashier's check in the             061-062
             amount of $400,000, dated August 7, 2008;

Exhibit I:   Receipt from Central District Court Clerk for               063-064
             $400,000, dated August 8, 2008;

Exhibit J:   Excerpts from the deposition transcript of Rudra            065-074
             Sabaratnam, dated October 21, 2008;
             Pages: 1, 98-100, 159-160, 190-192

Exhibit K:   Excerpts from the deposition transcript of Robert           075-081
             Bourseau, dated October 22, 2008;
             Pages: 1, 95-99

Exhibit L:   Notice of Assignment of Cash Bail Deposit;                   082-097
             Assignment of Cash Bail Deposit; Exhibits 1-4,
             filed July 1, 2009, CR 100;

//

//

CR 08-000904

| | | |
|---|---|---|
| Exhibit M: | Order Granting Plaintiff's and Defendants' Rule 59(e) Motions to Alter or Amend the Judgment, dated December 1, 2006, United States v. Bourseau, et al., SDCA Case No. 03cv907; | 098-103 |
| Exhibit N: | Excerpts from transcript of August 6, 2008, Initial Appearance; Pages: 1, 5-9, 16-17, 25-27 | 104-115 |
| Exhibit O: | Excerpts from transcript of August 7, 2008, Detention Hearing; Pages: 1, 4-8, 10-11, 16-17, 41, 67, 70 | 116-129 |
| Exhibit P: | Application, notice and writ of continuing garnishment regarding Garnishee Secured Equity Investment Partners, LP, as to Sabaratnam, filed June 19, 2008, and Answer to Writ filed July 1, 2008, United States v. Bourseau, et al., SDCA Case No. 03cv907; | 130-144 |
| Exhibit Q: | Application, notice and writ of continuing garnishment regarding Garnishee Secured Equity Investment Partners, LP, as to Sabaratnam, dated November 14, 2008, United States v. Bourseau, et al., SDCA Case No. 03cv907. | 145-161 |

CR 08-000904